*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0062p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

KEVIN EVERSON,

                *Plaintiff-Appellee,*

    *v.*

SIMON LEIS, Hamilton County Sheriff, and
ALBERT WITTICH, JR., Deputy, Hamilton
County Sheriff Department,

              *Defendants-Appellants.*

No. 07-4461

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 05-00087—Susan J. Dlott, District Judge.

Argued: October 28, 2008

Decided and Filed: February 20, 2009

Before: SILER and McKEAGUE, Circuit Judges; LUDINGTON, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Michael G. Florez, HAMILTON COUNTY PROSECUTOR'S OFFICE, Cincinnati, Ohio, for Appellants. Jennifer L. Branch, GERHARDSTEIN & BRANCH, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Michael G. Florez, David Todd Stevenson, HAMILTON COUNTY PROSECUTOR'S OFFICE, Cincinnati, Ohio, for Appellants. Jennifer L. Branch, Alphonse A. Gerhardstein, GERHARDSTEIN & BRANCH, Cincinnati, Ohio, for Appellee.

_____

[*] The Honorable Thomas L. Ludington, United States District Judge for the Eastern District of Michigan, sitting by designation.

—————————————

**OPINION**

—————————————

McKEAGUE, Circuit Judge.    This interlocutory appeal presents several interesting jurisdictional twists. The Plaintiff, Kevin Everson, suffers from epilepsy. He sued multiple defendants, including Hamilton County Sheriff Simon Leis and Deputy Sheriff Albert Wittich, Jr., for their purported unlawful treatment of him during and after a seizure he suffered in 2003. Sheriff Leis and Deputy Sheriff Wittich moved for summary judgment on various grounds, including qualified immunity. Rather than address the merits of the motion, the district court held it in abeyance and ordered that discovery be reopened. Defendants sought interlocutory appeal of that decision.

For the reasons set forth below, we conclude that we have jurisdiction over Defendants' qualified-immunity defenses. We further conclude that Defendants are immune from personal liability on several of Everson's federal claims.

**I**

**A.    Factual Background**

Everson alleges the following facts in his complaint: On or about April 19, 2003, Everson was at the Northgate Mall in Hamilton County, Ohio. Deputy Sheriff Wittich and Deputy Sheriff John Doe (collectively, the "Deputies") were employed by the Hamilton County Sheriff's Office as deputies and by the Northgate Mall as security officers.

While at the mall, Everson suffered an epileptic seizure that required medical assistance. Although they were trained by the county on how to respond and to assist someone suffering an epileptic seizure, Everson contended that the Deputies physically agitated and attacked him. They knew that someone suffering a seizure can be violent, and that any violence was the direct result of the epilepsy. Everson told them that he

was an epileptic and that their conduct was likely to cause him to suffer another seizure. Nevertheless, he asserted that the Deputies assaulted him, including hogtying him, and took him into custody. While in custody, Everson requested but was denied medical care. Everson was charged with assault and disorderly conduct, but the charges were later dismissed.

During his deposition, Everson provided further details regarding his seizures and the events at the mall. He can usually remember what happens before and after a seizure, but not what happens during a seizure. He frequently feels groggy and sometimes has headaches immediately after a seizure.

The seizure at Northgate Mall began when he was washing his hands in the restroom. He described his state of mind as "dazed" at the time. He exited the restroom and saw several individuals in uniform approach him. He could not say whether they were sheriff's deputies or mall security. He recalled that they asked him his name, and he responded by asking if he could sit down. The last thing he recalled prior to his seizure was being on the ground. After his seizure began to subside, he recalled finding himself in hand- and foot-restraints, lying face down on a cot.

He was then asked with whom he was at the mall, and he responded he was with his family. He was able to tell the individuals his name and where he was located. When asked whether he wanted to go to the hospital, he responded that his seizures did not require immediate medical attention. He was placed in a sheriff's squad car. He testified that his family did not see any of this.

Everson testified that while in the sheriff's squad car, he heard one deputy ask another, "What are we going to charge him with?" and the other responded, "I'll think something up and fax it down." He was eventually transported to the local detention center.

He testified that he told officials at the detention center that he had epilepsy and was taking medication for it. No one from the medical staff saw or treated him, however, while at the detention center. During his stay, he had several seizures. At least

one guard knew of his seizures because he offered Everson a mat for the floor so that Everson would not hit his head if he had another seizure. He remained at the detention center from Saturday evening to Monday morning.

Everson did not recall telling a deputy at the mall that he could have another seizure nor did he recall whether he pushed the deputy. He had an epilepsy-identification tag on his keychain, but not on a chain around his neck or wrist.

For their part, Defendants assert that the following factual statements are undisputed: Everson threatened to swing at mall security staff and local EMS. He kicked and swung at individuals as they approached him. When Deputy Wittich attempted to retrieve his identification, Everson became violent and kicked the deputy. After being placed on the ground, Everson continued to kick and fight. When an EMS worker tried to obtain a blood sugar reading, Everson pushed the worker away.

**B.     Procedural Background**

Everson sued Sheriff Leis, Deputy Sheriff Wittich, Deputy Sheriff John Doe, Northgate Mall, and John Doe Employee of Northgate Mall. He sued the government officials in both their individual and official capacities. He brought causes of actions under the Americans with Disabilities Act ("ADA"); 42 U.S.C. §§ 1983 and 1985 for illegal search, excessive force, unlawful arrest, and deliberate indifference to his serious medical needs; a separate equal protection claim under the Fourteenth Amendment; and an emotional distress claim under Ohio law.

The district court held a scheduling conference on July 22, 2005. The district court set a settlement conference for January 5, 2006; a discovery cut-off date of June 15, 2006; and a deadline for any motions for summary judgment of August 1, 2006. Shortly after the date for the settlement conference, Defendants deposed Everson. Everson's counsel failed to engage in any discovery. On August 1, 2006, Defendants

filed a motion for summary judgment asserting, *inter alia*, claims of qualified immunity.[1]

Everson's counsel failed to file a response, even after receiving a two-month extension of time to do so. The district court issued a show-cause order; Everson's counsel asked to withdraw from the case for personal reasons. His request was granted, and he was subsequently suspended from the practice of law in Ohio. Everson obtained new counsel. Everson's new counsel filed a response opposing summary judgment and asking that discovery be reopened. The district court granted the request, ordered that discovery be reopened for ninety days, and ordered that Everson's counsel file a second response to the motion after the close of discovery.

Defendants sought interlocutory appeal of the district court's decision.

## II

### A.     Jurisdiction

Title 28 U.S.C. § 1291 limits appellate jurisdiction to "final decisions of the district courts." Interlocutory appeals can be made under § 1291 in limited circumstances, namely when the district court's order "is effectively unreviewable on appeal from a final judgment," when it "conclusively determine[s] the disputed question," and when the question involves a claim "of right separable from, and collateral to, rights asserted in the action." *Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985) (citations omitted). A decision on qualified immunity is separable from and collateral to any rights asserted in the action. *Id.* The issue on jurisdiction in this appeal boils down to whether the district court's order is effectively reviewable only on interlocutory appeal and whether the order conclusively determined the question of qualified immunity.

---

[1] Northgate Mall was dismissed from the case in January 2006.

Defendants rely upon a series of cases holding that a district court cannot refuse to resolve a question of qualified immunity raised before discovery is closed, but must instead determine whether qualified immunity is proper or whether further discovery is necessary to resolve the question. In *Skousen v. Brighton High School*, the court on interlocutory appeal found that the district court had erred in first holding a summary-judgment motion in abeyance and then denying it without prejudice while the plaintiff finished discovery. 305 F.3d 520, 527 (6th Cir. 2002). In doing so, the court reasoned,

> Rather than dismiss the [summary judgment] motion because discovery was not complete, the district court was required to determine—prior to permitting further discovery—whether [plaintiff's] complaint alleged the violation of a constitutional right at all, and if so, whether that right was clearly established at the time of the alleged violation.

*Id.* Qualified immunity is intended not only to protect officials from civil damages, but just as importantly, to protect them from the rigors of litigation itself, including the potential disruptiveness of discovery. *Id.* at 526. By refusing to address qualified immunity when it was raised, the district court had undercut one of the primary rationales for such immunity—to save officials from unwarranted discovery. *Id.* at 527. The panels in *Summers v. Leis*, 368 F.3d 881 (6th Cir. 2004), and *Wallin v. Norman*, 317 F.3d 558 (6th Cir. 2003), came to the same conclusion under similar procedural backgrounds.

In arguing against jurisdiction, Everson relies upon this court's decision in *Kimble v. Hoso*, 439 F.3d 331 (6th Cir. 2006). The court in *Kimble* concluded that it did not have jurisdiction on interlocutory appeal over a defendant's motion for summary judgment on qualified immunity. In the proceedings below, the district court had stayed discovery until the question of qualified immunity could be resolved. *Id.* at 333. Plaintiff's counsel failed to file a response brief by the deadline; eventually, the district court ordered that plaintiff's counsel obtain co-counsel to assist. *Id.* Co-counsel entered the case, but requested another extension of time to file a response. *Id.* The district court granted the extension, and the defendants appealed. *Id.*

The court held that Kimble's case differed from *Skousen* in two critical ways. First, there was no order by the district court in Kimble's case actually dismissing without prejudice the summary-judgment motion. *Id.* at 335. Without an order to appeal, the court believed that the issue of qualified immunity had not been conclusively determined. *Id.* Second, the court noted that "the district court did not delay ruling on the defendants'[] motion for the legally erroneous reason of permitting further discovery." *Id.* The court went on to explain that with discovery stayed, "[t]his type of delay, which does not require the defendants to face any additional stages of litigation, does not undercut the essential purpose of qualified immunity." *Id.*

Here, we are faced with an appeal set between the *Skousen* line of cases and *Kimble*. Like *Kimble* and unlike the *Skousen* line, the district court did not deny or dismiss without prejudice Defendants' motion for summary judgment. Yet, like the *Skousen* line and unlike *Kimble*, the district court did permit additional discovery without first resolving the question of qualified immunity. The question becomes, then, whether this case is more like *Kimble* or more like the *Skousen* line.

We side with the latter. The rationale for qualified immunity clearly favors jurisdiction here. Like in *Skousen*, *Wallin*, and *Summers*, the district court permitted discovery to continue before first resolving the qualified-immunity question. Thus, Defendants would "be forced to go through a large part of the litigation process that the qualified immunity doctrine seeks to avoid." *Wallin*, 317 F.3d at 563. Arguably, the district court's actions here are even more egregious, as it did not simply let discovery continue through to the original cutoff date, but rather ordered an additional ninety days of discovery, to begin more than a year past the original discovery-cutoff date. As the Supreme Court recently reiterated, questions of qualified immunity should be resolved "at the earliest possible stage in litigation," or else the "driving force" behind the immunity—avoiding unwarranted discovery and other litigation costs—will be defeated. *Pearson v. Callahan*, — S. Ct. —, 2009 WL 128768, at *6 (U.S. Jan. 21, 2009).

This court "has held on multiple prior occasions that, when faced with a motion based on qualified immunity, a district court *can not* avoid ruling on the issue."

*Summers*, 368 F.3d at 886 (citing *Skousen*, 305 F.3d at 520) (emphasis added).  "Only after the [district] court inquires whether any facts material to [the plaintiff's] claims are genuinely at issue, and only upon a finding that material facts are in fact in dispute is a [district] court at liberty to hold a motion for summary judgment in abeyance pending additional discovery." *Id.* (citing *Skousen*, 305 F.3d at 527).  If a district court can thwart interlocutory appeal by refusing to address qualified immunity through abeyance rather than dismissal, then the district court can effectively ignore this court's directive that district courts address qualified immunity promptly.

Finally, the three factors used by the Supreme Court in *Mitchell* favor interlocutory appeal.  As noted above, qualified immunity involves rights different from but collateral to those asserted in the action.  As to the second factor, the district court's order to hold the motion until after the completion of additional discovery cannot be undone on final appeal—the goal of minimizing an official's exposure to unwarranted discovery will have already been undermined.  On the third factor, the order conclusively determined Defendants' claim of right to avoid further discovery.  Applying this same analysis, the Fifth Circuit held in *Helton v. Clements* that a district court's order declining or otherwise refusing to rule on a motion to dismiss based on qualified immunity is an immediately appealable order. 787 F.2d 1016, 1017 (5th Cir. 1986).[2]  The Second Circuit came to a similar conclusion in *Smith v. Reagan*, 841 F.2d 28, 31 (2d Cir. 1988) (concluding that a district court's order holding in abeyance a motion to dismiss on immunity grounds was immediately appealable, and reasoning: "The failure of the district court to decide the State's motion does not alter the State's right to have an early determination of its claim of immunity.  By holding the decision in abeyance pending the completion of all discovery in the case, the district court

---

[2]After granting summary judgment to one defendant, the district court went on to hold in the same order,

> [A]ll parties and attorneys are here notified that any further motions in this case will not be ruled upon by the court prior to trial but will be carried along with the trial of the case on the merits.  This ruling applies to any pending motions.

*Helton*, 787 F.2d at 1017.  This court in *Kimble* distinguished *Helton* on the grounds that, unlike *Helton*, there was no concern that the purpose of qualified immunity would be undercut because discovery had been stayed. *Kimble*, 439 F.3d at 335-36.  In this sense, the present case is more analogous to *Helton* than to *Kimble*.

effectively denied that right."). For these reasons, we find that a district court's decision to hold in abeyance a motion seeking qualified immunity is immediately appealable *unless* that decision is related to the proper disposition of the motion.

A district court can, of course, determine in its reasoned judgment that a decision on a motion for summary judgment cannot be made without further discovery. Pursuant to Federal Rule of Civil Procedure 56(f), "If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken . . . ." Here, the district court held Defendants' motion in abeyance because, in its view, ruling on the motion "would unduly penalize [Everson] for circumstances entirely outside of his control." *Everson v. Leis*, No. 1:05-CV-0087, Order Reopening Discovery at 1-2 (S.D. Ohio Oct. 11, 2007). Nowhere in its order did the district court address whether discovery was actually necessary, i.e., whether Everson's complaint alleged the violation of a constitutional right and, if so, whether that right was clearly established on April 19, 2003.

In ordering a new period for discovery, the district court relied upon the sworn declaration of Everson's present counsel. In that declaration, counsel stated that as a result of the prior counsel's failure to take any discovery, "Plaintiff cannot present facts essential to oppose the merits" of Defendants' dispositive motion. He further stated, "If the Court reopens discovery, Plaintiff will depose Defendants and eye witnesses to the incident in question, request production of documents from Defendants, and issue interrogatories to Defendants." This is the extent of counsel's explanation for the need for new discovery.

This declaration does not meet the minimum standards of Rule 56(f). "Bare allegations or vague assertions of the need for discovery are not enough" under Rule 56(f). *Summers*, 368 F.3d at 887 (citations omitted). To fulfill the requirements of Rule 56(f), Everson (through counsel) had to describe with " 'some precision the materials he hopes to obtain with further discovery, and exactly how he expects those materials

would help him in opposing summary judgment.' " *Id.* (quoting *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed. Cir. 1996)). The declaration of Everson's counsel fails to satisfy either requirement.

Thus, the district court did not have sufficient grounds under Rule 56(f) for ordering a new discovery period. Without some sound reason for refusing to rule on Defendants' motion that was related to the proper resolution of the motion (e.g., a well-supported need for discovery), the district court's refusal to rule can be appealed immediately to this court.

**B.        Qualified Immunity**

### 1.        In General

In order to prevail on a civil rights claim under 42 U.S.C. § 1983, Everson must establish that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006). Everson must also overcome the defense of qualified immunity, which shields government officials from personal liability "for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Because Everson has sued Sheriff Leis and Deputy Sheriff Wittich in both their personal and official capacities, this interlocutory appeal addresses only Everson's personal-capacity claims.[3]

---

[3]"[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). "[O]fficial-capacity suits . . . represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978); *see also Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."). As long as the governmental entity receives notice and an opportunity to respond, an official-capacity suit "imposes liability on the entity that he represents." *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). A government entity cannot claim any personal immunities, such as quasi-judicial or qualified immunity. *Alkire*, 330 F.3d at 810-11 (citing *Graham*, 473 U.S. at 167). "The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment." *Id.* at 811 (quoting *Graham*, 473 U.S. at 167).

The issue of qualified immunity is essentially a legal question for the court to resolve. *Elder v. Holloway*, 510 U.S. 510, 516 (1994); *Tucker v. City of Richmond*, 388 F.3d 216, 219 (6th Cir. 2004). "In determining whether qualified immunity applies, [the court] employ[s] a two-part test, asking (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008) (internal quotation marks omitted).[4] "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." *Id.* (internal quotation marks omitted). "The doctrine protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted).

When, as here, a defendant raises qualified immunity as a defense, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006). The plaintiff has the burden of showing that a right is clearly established. *Barrett v. Steubenville City Sch.*, 388 F.3d 967, 970 (6th Cir. 2004). However, the defendant carries the burden of showing that the challenged act was objectively reasonable in light of the law existing at the time. *Tucker*, 388 F.3d at 220. While the facts are normally taken as alleged by the plaintiff, facts that absolutely contradict the record will not be considered as claimed by the plaintiff. *Marvin v. City of Taylor*, 509 F.3d 234, 249 (6th Cir. 2007).

### 2.      Sheriff Leis

Viewed in the light most favorable to Everson, the allegations do not show that Sheriff Leis violated any constitutional right of Everson's. Everson argues on appeal that Sheriff Leis "failed to train his corrections officers at intake and at the Queensgate jail to provide medical care to Mr. Everson." Appellee's Br. at 18. There are at least two fundamental problems with this argument. First, Everson never pleaded a failure-to-train

---

[4]This two-part test is sometimes expanded to three parts. *See, e.g.*, *Peete v. Metro. Gov't of Nashville*, 486 F.3d 217, 219 (6th Cir. 2007), *cert. denied*, 128 S. Ct. 2466 (2008). The essential factors considered are, however, the same.

claim against Sheriff Leis. The only place where the word "train" appears in his complaint is in the factual allegations at ¶9, "Defendant [sic] Hamilton County trained their Deputies on how to respond and assist an individual having an epileptic seizure and how to approach and recognize an individual who is coming out of an epileptic seizure."[5] Nowhere does Everson make a claim that the Sheriff failed to train his deputies in some way or that any failure or deficiency in training amounted to a deliberate indifference to Everson's rights. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Even under the notice-pleading standard of Federal Rule of Civil Procedure 8, the mere mention (once) of training was insufficient to put Sheriff Leis on notice of any failure-to-train claim. *See Summers*, 368 F.3d at 888 (concluding that defendant-sheriff was entitled to qualified immunity because the plaintiff's complaint attributed no specific acts to the sheriff).

Second, Everson attempts to conflate a § 1983 claim of individual supervisory liability with a claim of municipal liability. Section 1983 liability must be premised on more than mere respondeat superior, the right to control one's employees. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). A supervisor is not liable under § 1983 for failing to train unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)).

Here, Everson makes no specific allegation against Sheriff Leis vis-à-vis training. He does not suggest, for example, that Sheriff Leis enacted a policy that restricted deputy training for dealing with an individual suffering an epileptic seizure. In general terms, he argues in his brief on appeal that Sheriff Leis is the chief policy officer and is responsible for the actions of those who serve under him. Appellee's Br. at 18. He further argues by inference that because the Deputies allegedly failed to give him proper medical attention, that shows that Sheriff Leis's training was improper and inadequate.

---

[5]Hamilton County was never a defendant in this case.

*Id.* at 20. This court recently explained that these types of general allegations are insufficient to support a failure-to-train claim made against an official, as opposed to a municipality:

> Although the district court found that there was a genuine issue of material fact as to whether Roane County had a policy or custom of deliberately ignoring prisoners' medical needs, that finding is not on appeal. *See Meals* [*v. City of Memphis*], 493 F.3d [720], 727 [(6th Cir. 2007)] (a city is not entitled to appeal the district court's denial of summary judgment on an interlocutory appeal). The Estate's general allegations that the correctional officers and paramedics were not properly trained are more appropriately submitted as evidence to support a failure-to-train theory against the municipality itself, and not the supervisors in their individual capacities. *See City of Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989) (recognizing that a systematic failure to train officers adequately as a custom or policy may lead to city liability). While an individual supervisor may still be held liable in his or her individual capacity under a failure-to-train theory, the Estate must point to a specific action of each individual supervisor to defeat a qualified immunity claim. And because the Estate has not advanced any specific allegations against Yager, Haggard, or Wright, we dismiss the case against these three defendants.

*Phillips v. Roane County*, 534 F.3d 531, 543-44 (6th Cir. 2008).

As Everson's assertions reveal no specific allegations of a failure to train by Sheriff Leis, and as Everson did not even plead a failure-to-train claim against the Sheriff in his complaint, Sheriff Leis is entitled to qualified immunity.

### 3.       **Deputy Sheriff Wittich**

As in *Skousen*, there exists a wrinkle in the analysis of Everson's claims against Deputy Sheriff Wittich. Generally, once a party makes a motion for summary judgment and supports it as required under Rule 56(c), the opposing party "cannot rest solely on the allegations made in [his] pleadings." *Skousen*, 305 F.3d at 527. He must, instead, "set forth by affidavits or otherwise specific facts showing that there is a genuine issue for trial." *Id.* (citing Rule 56(e); *Arnett v. Myers*, 281 F.3d 552, 559 (6th Cir. 2002)). There is no affidavit swearing to the veracity of the factual allegations in Everson's

complaint. There is no affidavit or other evidence supporting Everson's response to Defendants' motion for summary judgment; the only thing attached to the response is counsel's conclusory Rule 56(f) declaration. The failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion. *See id.* at 528.

Yet, when analyzing qualified immunity on interlocutory appeal, our jurisdiction is quite narrow. Interlocutory review is permitted where a defendant argues merely that his alleged conduct did not violate clearly established law. *Mitchell*, 472 U.S. at 530. This is a legal question and is independent from the question of whether there are triable issues of fact. In effect, a defendant on interlocutory appeal of a qualified immunity defense "must be prepared to overlook any factual dispute and to concede an interpretation of the facts in the light most favorable to the plaintiff's case." *Berryman v. Rieger*, 150 F.3d 561, 562 (6th Cir. 1998).

Despite the lack of affidavits or other forms of evidence from Everson's side, there is some evidence in the record from Everson—his deposition testimony. Everson's prior counsel was present during the deposition, and a review of the transcript shows that Everson was permitted in large part to give his side of the story. With the requirements of Rule 56(c) and the narrow scope of this court's jurisdiction, we read Everson's deposition testimony in the light most favorable to his claims against Deputy Sheriff Wittich in determining whether the deputy should be immune from any personal liability. If, however, there is "hard evidence" that one of Everson's factual allegations made in his complaint is "demonstrably false" and his deposition testimony is otherwise silent, we need not treat that allegation as true for purposes of this interlocutory appeal. *Skousen*, 305 F.3d at 528.

Given the rather awkward procedural posture of this appeal, it should be unsurprising that Defendants may fail to present Everson's factual allegations in the best light in every instance. While the refusal to concede factual questions to a plaintiff will typically doom a defendant's interlocutory appeal on qualified immunity, that need not happen here. "As this court has frequently observed, '[i]f . . . aside from the

impermissible arguments regarding disputes of fact, the defendant also raises the purely legal question of whether the facts alleged . . . support a claim of violation of clearly established law, then there is an issue over which this court has jurisdiction.' " *Kirby v. Duva*, 530 F.3d 475, 481 (6th Cir. 2008) (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005)). "Consequently this court may simply ignore defendants' attempts to dispute [a] plaintiff['s] version of the facts, 'obviating the need to dismiss the entire appeal for lack of jurisdiction.' " *Id.* (quoting *Estate of Carter*, 408 F.3d at 310).

Everson argues on appeal that he has pleaded various federal constitutional claims against Deputy Sheriff Wittich. These are: illegal search; excessive force; arrest without probable cause; and failure to provide adequate medical attention. He also asserts a claim under the ADA and one under the Fourteenth Amendment's Equal-Protection Clause. These are each addressed below.

### a.      Illegal Search

In determining whether the right against unreasonable searches and seizures has been violated, we must consider whether the action is "attributable to the government," and amounts to a "search" or "seizure" for Fourth-Amendment purposes. If so, then we must determine whether the search or seizure was unreasonable under the circumstances. *See* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable* searches and seizures, shall not be violated, . . . but upon probable cause . . . ." (emphasis added)). While a warrant issued upon probable cause is generally required for a search or seizure to be deemed "reasonable," the Supreme Court has recognized particularized exceptions to the main rule, when "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989). In addition, Ohio law prohibits any cause of action against a law enforcement officer who makes "a reasonable search of the disabled person to locate an identifying device or identification card, even though the person is not wearing an identifying device or carrying an identification card." O.R.C.

§ 2305.43(D).

Everson did not allege in his complaint that either Deputy Sheriff Wittich or the John Doe deputy performed an illegal search on his person.  Rather, he alleged that an unknown employee of Northgate Mall searched him.  Nor, in his response to Defendants' motion for summary judgment, did Everson clarify that the illegal-search claim was directed at Deputy Sheriff Wittich.  While Everson faults Defendants for failing to address the illegal-search claim in their motion for summary judgment, *see* Appellee's Br. at 21-22 & 21 n.1, they were not on reasonable notice that he was even making out a claim of illegal search against Deputy Sheriff Wittich.  In any event, Everson has not shown how Deputy Sheriff Wittich's admitted attempt to ascertain his identification during his seizure was unreasonable under the circumstances.

### b.     Excessive Force

As with the purported illegal-search claim, Everson argues on appeal that Defendants failed to address his excessive-force claim in their motion for summary judgment and therefore should be precluded from seeking immunity from it on appeal. *See* Appellee's Br. at 21-22.  But, again, Everson never clearly made out an excessive-force claim in his complaint.  At best, he pleaded factual allegations that *could* support such a claim.  Yet, in his second and third causes of actions—the ones claiming violation of federal constitutional law—he speaks of equal protection violations, deliberate indifference to his medical needs, illegal search, and the lack of probable cause to arrest, file charges, and prosecute.  There is no assertion of a claim of excessive force in violation of the Fourth Amendment.  It appears that the first time he asserted an excessive-force claim is in his response to Defendants' motion for summary judgment.

Even assuming he had given sufficient notice of an excessive-force claim against Deputy Sheriff Wittich, Everson testified that he had no recollection of the events between when his epileptic seizure began and when he fully regained awareness as he was being transported to the squad car.  The affidavits of Deputy Sheriff Wittich and

EMS personnel describe during this period a vocally abusive and physically agitated person who continued to kick and fight even when personnel tried to restrain him. Everson testified that he did not recall whether he pushed anyone; in fact, he testified that he was dazed, groggy, and that he suffered "strobe-light" sensations during this time. Even taking his deposition testimony in the best light, there is nothing to rebut the affidavits submitted by Defendants showing that Everson posed an immediate threat to the safety of himself and emergency personnel. This distinguishes this case from *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893 (6th Cir. 2004), where the court concluded that officers were not immune from the plaintiff's excessive-force claim. In that case, there was record evidence that officers applied pepper spray to the plaintiff, who was mentally retarded, as well as significant pressure to his chest and back, even after he was immobilized with handcuffs and a hobbling device. *Id.* at 901. Here, Everson has provided no evidence to call into question Deputy Sheriff Wittich's account that Everson continued to pose a threat even after he had been placed on the ground. Accordingly, Deputy Sheriff Wittich is immune from personnel liability on any excessive-force claim of Everson's.

### c.       Unlawful Arrest and Malicious Prosecution

Everson does clearly allege in his complaint that Defendants lacked probable cause to arrest and prosecute him. Both claims essentially come down to whether Deputy Sheriff Wittich had probable cause to arrest and charge Everson with assault and disorderly conduct.

"In order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002). "A police officer has probable cause only when he discovers reasonably reliable information that the suspect has committed a crime." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). Furthermore, "in obtaining such reliable information, an officer cannot look only at the evidence of guilt while ignoring all exculpatory evidence. Rather, the officer must consider the totality of the circumstances, recognizing

both the inculpatory *and* exculpatory evidence, before determining if he has probable cause to make an arrest." *Id.* (emphasis in original, citation omitted). Police officers may not "make hasty, unsubstantiated arrests with impunity," nor "simply turn a blind eye toward potentially exculpatory evidence known to them in an effort to pin a crime on someone." *Ahlers v. Schebil*, 188 F.3d 365, 371-72 (6th Cir. 1999).

A determination of whether probable cause existed requires us to examine the totality of the circumstances, and we may "consider only the information possessed by the arresting officer at the time of the arrest." *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir.), *cert. denied*, 128 S. Ct. 2938 (2008). "A finding of probable cause does not require evidence that is completely convincing or even evidence that would be admissible at trial; all that is required is that the evidence be sufficient to lead a reasonable officer to conclude that the arrestee has committed or is committing a crime." *Id.*

"In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Fridley*, 291 F.3d at 872; *see also Gardenhire*, 205 F.3d at 315 (explaining that the court "must determine whether a jury could conclude that a reasonable officer could have believed that [the arrested individual] had probably committed or [was] committing a crime"). But under § 1983, "an arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent." *Harris*, 513 F.3d at 511 (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

Deputy Sheriff Wittich argues that Everson verbally threatened and physically assaulted mall personnel, EMS personnel, and the Deputies. He contends that these actions "clearly met the elements" of assault under O.R.C. § 2903.13 and disorderly conduct under O.R.C. § 2917.11. He argues that because there was no constitutional violation, he is entitled to qualified immunity.

Contrary to Everson's argument on appeal, law enforcement officials are not necessarily precluded under federal law from arresting someone who displays symptoms

of a known medical condition. *See, e.g.*, *United States v. Villagrana-Flores*, 467 F.3d 1269, 1274 (10th Cir. 2006) ("Merely because an individual can be detained for mental health reasons, however, does not rule out the possibility that the same individual can alternatively be detained for committing crime. . . . All that is required is a particularized and objective basis for suspecting the particular person stopped of criminal activity." (internal quotation marks omitted)). The cases from this circuit that Everson relies upon, *Champion* and *Peete*, are inapposite. *Champion* involved an excessive-force claim only; the question of whether the officers had probable cause to arrest the autistic plaintiff was never at issue in the case. 380 F.3d at 897. As for *Peete*, the court found that paramedics did not violate the right of the epileptic plaintiff to be free of unreasonable seizure by the government. 486 F.3d at 222.

Everson argues that Deputy Sheriff Wittich lacked probable cause to arrest him for assault and disorderly conduct. Although there is unrebutted record evidence that Everson constituted a physical threat during the time he suffered his seizure, this does not necessarily mean that the resulting arrest was warranted. Viewed in the light best to Everson, he had recovered from his seizure when he arrived at the squad car. There is nothing in the record to suggest that he was physically or verbally abusive at that time. Deputy Sheriff Wittich knew that Everson had suffered an epileptic seizure. It is a fair inference, then, that the deputy should have known that Everson's actions were made with, at best, a semi-conscious frame of mind.

Everson directs our attention to O.R.C. § 2305.43(A), which sets forth the standard of care under Ohio law to be applied by an officer dealing with a disabled person,

> A law enforcement officer shall make a diligent effort to determine whether any disabled person he finds is an epileptic or a diabetic, or suffers from some other type of illness that would cause the condition. Whenever feasible, this effort shall be made before the person is charged with a crime or taken to a place of detention.

Because the provision requires that an officer determine whether a person is an epileptic "before the person is charged with a crime," it stands to reason that § 2305.43(A) may

excuse otherwise criminal conduct if the conduct is committed by an epileptic, at least under certain circumstance; otherwise, there would be no need to determine whether the person was an epileptic prior to charging him. Everson's assault charge required that a person knowingly commit an assault, while the disorderly conduct required that a person recklessly commit the act.[6] Given Deputy Sheriff Wittich knew that Everson was suffering an epileptic seizure during the time he engaged in the otherwise criminal conduct, § 2305.43(A) arguably calls into question whether the deputy had probable cause to arrest Everson. In short, Deputy Sheriff Wittich considered the inculpatory evidence of guilt, but not the exculpatory evidence of lack of mens rea, according to Everson.

The next question, then, is what effect, if any, does this state statute have on Deputy Sheriff Wittich's claim of qualified immunity from Everson's federal claim? Plainly, the federal right to be subject only to arrest upon probable cause was clearly established when Deputy Sheriff Wittich arrested Everson. Moreover, it was clearly established that officers had to consider both inculpatory and exculpatory evidence under the federal totality-of-the-circumstances standard. However, it was not clearly established how O.R.C. § 2305.43(A) altered, if at all, an officer's probable-cause calculus. To date, no federal or Ohio state court has addressed the question of whether O.R.C. § 2305.43(A) requires an officer to refrain from arresting and charging a disabled person who has committed an act that would clearly be a criminal act if committed by a non-disabled person. While Ohio state courts generally recognize that blacking out during a seizure can be an affirmative defense in certain instances, *see In re Kristopher F.*, No. 2006CA00312, 2007 WL 1840857, at *8 (Ohio Ct. App. June 27, 2007) (unpublished), the existence of a possible affirmative defense does not always defeat a finding of probable cause, *see Fridley*, 291 F.3d at 874 ("[I]t is not the rule that [police] must investigate a defendant's legal defenses prior to making an arrest."). Although O.R.C. § 2305.43(A) arguably requires that an Ohio officer determine whether a person suffers from epilepsy prior to concluding that there is probable cause for an arrest, that

---

[6]*See* O.R.C. § 2903.13(A) ("No person shall knowingly cause or attempt to cause physical harm to another . . . ."); O.R.C. § 2917.11(A) ("No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following: (1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior . . . .").

provision's impact on a person's Fourth-Amendment right to be free from unlawful arrest was not clearly established when Deputy Sheriff Wittich arrested Everson. Accordingly, the deputy is entitled to qualified immunity on Everson's unlawful arrest and malicious prosecution claims.

### d.          Deliberate Indifference to a Serious Medical Need

Although Everson asserted in his complaint that he needed medical care immediately after his seizure at the mall, he testified to the opposite. As he explained during his deposition, he was asked whether he wanted to go to the hospital and he declined, explaining to emergency personnel that the kind of seizure he had did not require medical attention. He has consistently claimed, however, that personnel at the county jail ignored his medical condition—he was refused any medication to control his seizures and only given a mat to protect his head in case he suffered another seizure.

There is, however, nothing in the complaint, Everson's deposition, or the affidavits filed in support of Defendants' motion for summary judgment to suggest that Deputy Sheriff Wittich worked at the detention center, had any personal contact with Everson at the center, or was present there at any time other than when he took Everson in for booking. Considering Everson's allegations and the factual record in the light most favorable to him, it is clear that Deputy Sheriff Wittich did not act with deliberate indifference to Everson's serious medical needs during Everson's stay in the detention center.

## C.          Americans with Disabilities Act

Everson has also asserted a claim under Title II of the ADA. Defendants argue that the claim must be dismissed because there is no provision under Title II that addresses Everson's allegations. Everson responds that qualified immunity is not available on an ADA claim.[7]

---

[7]Under the case law of this circuit and our sister circuits, the proper defendant under a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396-97 (6th Cir. 2002). As qualified immunity protects a public official in his individual capacity

Defendants' argument goes to whether Everson's entire claim must fail as a matter of law, not to whether they should be immune in their individual capacities from civil damages. Our jurisdiction on this interlocutory appeal is strictly limited to matters of qualified immunity. Therefore, because we lack jurisdiction, we cannot address the merits of Everson's ADA claim.

**D.        Equal Protection under the Fourteenth Amendment**

Everson asserted a claim against Defendants under the Equal-Protection Clause of the Fourteenth Amendment. Although difficult to decipher, it appears that Everson claims that Deputy Sheriff Wittich violated his right to equal protection by failing to treat him as an epileptic patient. As with the ADA claim, there is a question of whether Defendants asserted qualified immunity to Everson's equal-protection claim. Because Sheriff Leis's liability for any equal-protection violation must be premised on a failure-to-train theory, his argument for qualified immunity against Everson's constitutional claims is broad enough to encompass this claim. However, in the motion for summary judgment, Deputy Sheriff Wittich did not argue that he should be immune from personal liability for any claim premised on treating Everson differently as a result of his epilepsy; instead he argued that Everson had failed to state a valid cause of action. While the claim appears to have little or no support in law or fact, because Deputy Sheriff Wittich has not specifically sought qualified immunity on the claim, we are without jurisdiction to address it.

---

from civil damages, such immunity is unavailable to the public entity itself or the official acting in his official capacity. *Hall v. Tollett*, 128 F.3d 418, 430 (6th Cir. 1997); *see also supra* n.3. Title II of the ADA does not, however, provide for suit against a public official acting in his individual capacity. *See, e.g.*, *Garcia v. SUNY Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 808 n.1 (6th Cir. 1999); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999); *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 404-05 n.6 (6th Cir. 1997); *Williams v. McLemore*, 247 F. App'x 1, 6 (6th Cir. 2007) (unpublished). To the extent that qualified immunity is even applicable to an individual-capacity claim under Title II, this and other courts have held that such immunity is available, contrary to Everson's assertion. *See, e.g.*, *Bartell v. Lohiser*, 215 F.3d 550, 555 n.1 (6th Cir. 2000) ("[T]his Circuit, as well as a number of sister Circuits, have granted state employees qualified immunity against ADA and Rehabilitation Act claims." (collecting cases)).

**E.          State Law Claims**

Finally, Everson asserted a claim of emotional distress under Ohio law, and Defendants sought immunity from liability under O.R.C. ch. 2744.  Title 28 U.S.C. § 1367 vests the district court with the authority to decide whether to exercise supplemental jurisdiction over state-law claims.  The district court has not yet ruled on the matter.  Accordingly, we do not address Defendants state-law immunity argument at this time.

**III**

For the reasons set forth above, the district court erred by ordering additional time for discovery without first addressing Defendants' defense of qualified immunity. The district court's decision to hold the motion for summary judgment in abeyance was a final judgment for purposes of this court's jurisdiction on interlocutory appeal.  On the merits, Sheriff Leis and Deputy Sheriff Wittich are entitled to qualified immunity on all of Everson's federal claims, with the following exceptions: (A) because neither Sheriff Leis nor Deputy Sheriff Wittich have yet to seek qualified immunity on Everson's ADA claim, we are without jurisdiction to reach that claim at this time; and (B) because Deputy Sheriff Wittich has yet to seek qualified immunity on Everson's equal-protection claim, we are similarly without jurisdiction to reach that claim on interlocutory appeal. Accordingly, we **REVERSE** the district court's decision to hold the dispositive motion in abeyance and **REMAND** this case to the district court for further proceedings consistent with this opinion.