NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0260n.06

No. 11-1062

FILED

*Mar 07, 2012*

LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ROBERT CARLSON, Personal Representative of the )
Estate of Craig Carlson, )
                )
      *Plaintiff - Appellee*, )
                )
v. )
                )
SCOTT FEWINS, et al., )
                )
      *Defendants*, )
                )
CHARLES JETTER, individually and officially, )
                )
      *Defendant - Appellant*. )

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

O P I N I O N

BEFORE:      COLE and STRANCH, Circuit Judges; CARR, District Judge.[*]

        CARR, District Judge.  Defendant-Appellant Charles Jetter, a deputy sheriff, brings this interlocutory appeal from the district court's denial of his motion for summary judgment in an action brought pursuant to 42 U.S.C. § 1983.  Finding that the deputy's appeal of the denial of qualified immunity rests on disputed facts, we deny review for lack of jurisdiction over the interlocutory appeal.

---

       [*] The Honorable James G. Carr, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

## I. BACKGROUND

On the evening of November 9, 2007, Craig Carlson called 9-1-1 and asked for an officer to stop by and talk to him. Carlson had a history of mental health problems, including at least one suicide attempt. Local police had conducted several "welfare checks" on Carlson in the preceding months. *Id.* at 5. Shortly after Carlson called the police, his sister also called 9-1-1 to tell the police that Carlson needed to speak with someone, and had weapons in his home.

Officers arrived at Carlson's home. Carlson wanted to speak with an officer inside his home, and became agitated when the police stated they would speak with him only outside his home. Both Carlson's brother and sister spoke with the police, stating that Carlson was suicidal, had already paid his funeral expenses, and might point a gun at an officer in order to provoke being shot.

At this time, officers had surrounded Carlson's home, though they had not announced their presence. Carlson went to the back of his home, opened the door, and fired a shot into the open air. Police testified that this did not seem like an attempt to harm anybody, but only an effort to get law enforcement attention.

A police negotiator attempted several times to engage with Carlson, but after 3 a.m., Carlson refused all efforts at communication.

At 5:19 a.m. police launched tear gas into Carlson's home in an attempt to force Carlson out of the house, or to at least engage in communication. *Id.* at 8. Carlson showed no response. The police again launched tear gas into Carlson's home at 6:25 a.m., but to no avail. At 7 a.m., the police tossed a "throw phone" through the front window of Carlson's home. Again, Carlson showed no response. Shortly after 9 a.m., police saw Carlson through the front window, pacing and carrying

a rifle. At that time, there were several officers stationed around Carlson's home with shields and weapons; Jetter was positioned across the street.

One of the officers began a conversation with Carlson, in which Carlson threatened to sue the police for the damage to his home; the police officer sought to reassure Carlson that the county would pay for the damage. Appellee maintains that this is the sole discussion that occurred, and Jetter then shot Carlson without provocation. Jetter maintains that in this conversation, Carlson also threatened the police, and then leaned out the window, shouldered the rifle with his finger on the trigger, and pointed it at the police officers. Jetter does not dispute that he then shot Carlson. Other officers at the scene, many of whom were closer to Carlson, stated that they did not hear the specific threats or see some or all of the threatening actions alleged by Jetter. Two expert witnesses concluded that the available forensic evidence contradicts Jetter's description of Carlson's position when he was shot.

On October 22, 2008, Robert Carlson, as personal representative of the Estate of Craig Carlson, filed a complaint against Deputy Jetter, and other individual and departmental defendants, for violations of Carlson's constitutional rights under 42 U.S.C. § 1983.

After lengthy discovery, all defendants moved for summary judgment on the basis of qualified immunity on June 11, 2010. After holding a hearing, the district court denied the motion on December 23, 2010 as to the excessive force claim against Deputy Jetter in his personal capacity because of genuine issues of material fact, but granted summary judgment as to all remaining claims and defendants.

On January 13, 2011, Deputy Jetter timely filed a notice of appeal to this court.

## II. ANALYSIS

This court has jurisdiction to hear appeals only from "final decisions" of district courts. 28 U.S.C. § 1291. A narrow exception exists for interlocutory appeals where a district court denies a defendant's motion for summary judgment if "(1) the defendant was a public official asserting a defense of 'qualified immunity,' and (2) the issue appealed concerned, not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of 'clearly established' law." *Johnson v. Jones*, 515 U.S. 304, 311 (1995) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985)).

> The Supreme Court in *Johnson* went on to say that the
>
> appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. All it need determine is a question of law: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions. . . .

*Id.* at 312 (quoting *Mitchell*, 472 U.S. at 528).

This is not what Appellant challenges. Appellant instead asks this court to accept his version of the facts, and find that his version cannot support a violation of clearly established law. Interlocutory appeal on this basis is not permissible. As the Supreme Court states, an appealable interlocutory decision must not only conclusively determine a disputed question - it must also "involve a 'claim of right separable from, and collateral to, rights asserted in the action.'" *Mitchell*, 472 U.S. at 527 (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)).

While the court in *Mitchell* held that an interlocutory appeal taken from an order denying qualified immunity to public official defendants would fit these requirements, allowing the instant appeal would destroy that distinction by moving away from a "purely legal" issue to a factual issue.

The district court noted four factual issues which it could not resolve on summary judgment. Based upon the plaintiff's presentation of the facts, it had to assume that "Carlson did not threaten to shoot the officers, did not put his finger on the trigger of his weapon, did not shoulder the weapon, and did not lean out the window with his weapon shouldered." (Opinion and Order for Summary Judgment, Dist. Ct. Docket No. 202 at 34.) This court has held that "[i]n effect, a defendant on interlocutory appeal of a qualified immunity defense 'must be prepared to overlook any factual dispute and to concede an interpretation of the facts in the light most favorable to the plaintiff's case.'" *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009) (quoting *Berryman v. Rieger*, 150 F.3d 561, 562 (6th Cir. 1998)).

Despite this clear mandate, Appellant attempts to cast doubt on the plaintiff's presentation of the facts by stating that they constitute "unsupported or speculative allegations." While Appellant pays lip service to "the totality of the facts and circumstances as alleged by Plaintiff," Appellant Br. at 28, he includes several disputed facts in explaining why the district court erred. Among these are Carlson's alleged threats against police officers and the position of Carlson's weapon at the time Jetter fired the fatal shot. Appellant Br. at 28-36. These facts are disputed because there is contradictory evidence in the record, not because some witnesses merely did not see or hear all of the events. *Cf. Chappell v. City of Cleveland*, 585 F.3d 901, 914 (6th Cir. 2009).

Appellant's reliance on *Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397 (6th Cir. 2007), is misplaced. This case is similar to *Livermore* in that there was an armed standoff between the decedent and the police, but there are several key distinctions. The suspect and his accomplice were running a drug operation in their home; after failing to appear in court, they "set fire to the outbuildings . . . and barricaded themselves in their residence." *Id.* at 400-01. The accomplice then shot and struck a news helicopter flying overhead. *Id.* at 401. The suspect stated that he was ready to surrender, but instead set fire to his home and took a rifle into the woods, hiding between two trees. *Id.* The subsequent sequence of events was disputed by the parties, but it was clear that police were attempting to approach and engage with the suspect when a police sniper shot and killed him. *Id.* Disputed facts included whether the suspect was pointing his gun at the police, and if the police were exposed in his line of fire. *Id.*

This court held that it had jurisdiction over the case only to "consider whether, accepting the facts as alleged by Livermore, defendants are entitled to qualified immunity[.]" *Id.* at 403. The *Livermore* court held that, considering "the totality of the facts and circumstances as alleged by [the plaintiff]," the police officer "acted reasonably" in shooting the suspect because several factors compelled a finding that the decedent posed a "serious threat." *Id.* at 404. We agree with the district court that such a conclusion is not warranted here.

The facts in this case - and Appellant's arguments - are distinguishable from *Livermore*. In *Livermore*, this court was able to decide that the police sniper's actions were reasonable even when assuming disputed facts in the plaintiff's favor. Appellant does not concede disputed facts for purposes of this appeal, choosing instead to point out why he believes plaintiff's evidence failed to

sufficiently prove his case. This court cannot accept jurisdiction on these arguments. *See McKenna v. City of Royal Oak*, 469 F.3d 559, 562 n.2 (6th Cir. 2006) (denying jurisdiction where "officer-defendants have in fact made no legal argument for qualified immunity which can be extracted from their reliance on disputed facts").

This court has previously noted that its "jurisdiction does not extend to appeals that merely quibble with the district court's reading of the factual record[.]" *Leary v. Livingston Cnty.*, 528 F.3d 438, 441 (6th Cir. 2008). While Appellant's statement of the facts might very well be true, the questions of fact are not for this court to decide.

III. CONCLUSION

The appeal is dismissed for lack of jurisdiction.