NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0486n.06

No. 06-4370

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

**Jul 13, 2009**

LEONARD GREEN, Clerk

DEBBIE NOY, ELAINE ESTES, LAUREN GRACE
RHODES, VICTORIA BROOK RHODES,

    Plaintiffs-Appellants,

v.

LARRY D. TRAVIS, GERALDINE TRAVIS,
CHARLES ROBERT JUNK, JR.,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

BEFORE: GUY, ROGERS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiff Debbie Noy, along with her mother, plaintiff Elaine Estes, made a videotape of Noy's daughters' genitalia in an attempt to document what they suspected was evidence of sexual abuse by Noy's husband. After Noy presented the videotape to the Sheriff's office, defendants believed that Noy and Estes were themselves guilty of child abuse. Following an investigation, Noy and Estes were arrested and charged with child endangerment in violation of Ohio Revised Code § 2919.22(B)(2). Thereafter, a grand jury found probable cause for the charges and the case proceeded to trial. At trial, Noy was found not guilty, and the prosecutor subsequently dismissed the charges against Estes. Plaintiffs then filed this § 1983 action against defendants claiming false imprisonment, malicious prosecution, abuse of process, intentional infliction of emotional distress,

and violations of their Fourth, Fifth, and Fourteenth Amendment rights. The district court granted

summary judgment in favor of defendants, ruling that they were entitled to qualified immunity. The

court also dismissed plaintiffs' state law claims and ruled that Noy's children's claims were not

cognizable under § 1983.

I.

The relevant facts are accurately recited by the district court in its written opinion:

Ms. Noy is the mother of Victoria, born June 24, 1999, and Lauren, born May 14, 2001. Ronnie Rhodes is the father of Victoria and Lauren. Ms. Noy and Mr. Rhodes were married on June 9, 2001[.]

Larry Travis is the Pike County Sheriff. Geraldine Travis is a deputy and detective with the Pike County Sheriff's Department. Robert Junk is the Pike County Prosecuting Attorney.

On June 10, 2001, Ms. Noy noticed a change in Victoria's behavior and believed Mr. Rhodes sexually abused Victoria. As such, on June 11, 2001, Ms. Noy took Victoria to an appointment previously scheduled for Lauren with Dr. Bennett, so Victoria could be examined for signs of abuse.

Dr. Bennett's records indicate he performed external rectal and genital examinations on Victoria, which were within normal limits. Dr. Bennett's records also indicate he informed Ms. Noy of his findings and that it did not conclusively rule out the possibility of abuse, but made it unlikely. However, Ms. Noy contends Dr. Bennett did not notify her of his findings. Instead, he allegedly told her to bring Victoria back into the office the next day.

Ms. Noy then scheduled an appointment for Victoria to see Dr. Jetty. On June 14, 2001, she took Victoria to the emergency room at Holzer Hospital in Jackson, Ohio. Ms. Noy maintains the emergency room doctor indicated there was nothing he could do as 48 hours passed since the alleged abuse and any physical evidence would be gone. She also took Victoria to Children's Hospital in Columbus, Ohio on June 17, 2001.

Sometime between June 11 and 14, [2001], Plaintiffs made a videotape of Victoria's genitalia in an attempt to establish Victoria had been sexually abused. On a subsequent day, Plaintiffs also videotaped Lauren's genitalia because Ms. Noy was concerned Lauren may have also been sexually abused.

On June 14, 2001, prior to going to Holzer Hospital, Ms. Noy took the videotapes to the sheriff's office. At that time, Ms. Noy met with Ms. Travis and Mr. Roush [of Children's Services]. On June 15, 2001, a sheriff's deputy interviewed Ms. Noy.

Based upon the videotape and the interview, on or about June 27, 2001, Ms. Travis swore out a criminal complaint against Ms. Noy for two counts of endangering children, in violation of [OHIO REV. CODE] § 2919.22(B)(2), felonies of the third degree. On or about June 28, 2001, a warrant was issued for Ms. Noy. Subsequently, Mr. Junk presented the matter to the grand jury. On August 23, 2001, the grand jury returned an indictment against [Noy and Estes] on two counts of endangering children. On December 5, 2001, a jury found Ms. Noy not guilty of both counts of endangering children. Shortly thereafter, the Pike County Prosecutor's Office entered a *nolle prosequi* with respect to the charges pending against Ms. Estes.

Plaintiffs filed the instant action on December 4, 2002. They assert claims, pursuant to 42 U.S.C. § 1983, for violations of the Fourth, Fifth and Fourteenth Amendments (Count I), false imprisonment, malicious prosecution, abuse of process and intentional infliction of emotional distress (Count II). Additionally, Lauren and Victoria assert a claim, pursuant to 42 U.S.C. § 1983, for deprivation of their rights to association, services, comfort, education and love and affection of their mother, Ms. Noy, and grandmother, Ms. Estes.

(Internal citations and footnotes omitted.)

Plaintiffs timely appeal the summary judgment entered in favor of defendants. We affirm.

II.

We review a district court's grant of summary judgment de novo. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008). Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV.

P. 56(c). When reviewing a motion for summary judgment, the court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party." *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

### III.

Plaintiffs argue that the district court erred in ruling that defendants were entitled to qualified immunity. To prevail, plaintiffs must show that defendants deprived them of a right secured by the Constitution or laws of the United States while acting under the color of state law. *Everson v. Leis*, 556 F.3d 484, 493 (6th Cir. 2009). "[W]e employ a two-part test, asking (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008) (citation and internal quotation marks omitted). "The doctrine protects all but the plainly incompetent or those who knowingly violate the law." *Id*. When applying the qualified immunity test, plaintiffs have the burden of showing that a right is clearly established. *Barrett v. Steubenville City Sch.*, 388 F.3d 967, 970 (6th Cir. 2004). To prove their entitlement to qualified immunity, defendants must demonstrate that their challenged actions were objectively reasonable in light of the existing law at the time. *Tucker v. City of Richmond*, 388 F.3d 216, 220 (6th Cir. 2004).

Plaintiffs' claims are based upon the alleged unconstitutionality of their arrests and charges. The right to be free from an arrest lacking in probable cause is clearly established. *See Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999). Thus, the question is whether defendants' actions were objectively reasonable. Noy was ultimately found not guilty of the criminal charges, but the Supreme Court has held that the "validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). In this regard, the Court "repeatedly has explained that 'probable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id*. at 37.

Rather than argue that the videotape did not establish probable cause for a violation of Ohio's child endangerment statute, plaintiffs assert that the district court gave improper weight to the grand jury indictment that occurred after defendants initiated the criminal complaint.[1] Plaintiffs rely upon *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 307 n.13 (6th Cir. 2005), wherein we stated that "after-the-fact grand jury involvement cannot serve to validate a prior arrest." This statement of law is consistent with the requirement that probable cause be based on "all facts and circumstances *within an officer's knowledge at the time of an arrest.*" *Dietrich*, 167 F.3d at 1012; *see also*

---

[1]The grand jury returned an indictment on August 23, 2001, approximately two months after Noy and Estes were arrested and charged.

*Radvansky*, 395 F.3d at 302 ("A reviewing court must assess the existence of probable cause 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'") (quoting *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001)). Nonetheless, while a subsequent indictment is not a substitute for probable cause at the time of the arrest, it does not nullify any probable cause that may have otherwise existed.

Noy presented defendants with a graphic videotape of her examining her naked children. On appeal, plaintiffs' brief concedes that the videotape "is *admittedly disturbing* to a non-medical audience . . . ." (Emphasis added.) Based upon the evidence known at that time, and given the graphic and "disturbing" nature of the videotape, defendants concluded that there was probable cause to arrest and charge Noy and Estes. Because such a determination of probable cause was objectively reasonable at the time it was made, we hold that the district court did not err in ruling that defendants were entitled to qualified immunity.

IV.

Plaintiffs also argue that the district court erred by granting defendants statutory immunity regarding the state law claims. The totality of plaintiffs' argument is as follows:

> Ohio Revised Code § 2744.03(A)(6) provides – in relevant part – that employees of a political subdivision are immune from civil liability unless the acts or omissions that form the basis of the claim asserted "were with malicious purpose, in bad faith, or in a wanton or reckless manner." The district court erroneously held that Mr. Junk, Deputy Travis, and Sheriff Travis are entitled to immunity under this subsection because the plaintiffs failed to present any evidence of malicious purpose, bad faith, or wanton or reckless behavior. To the contrary, the record is replete with evidence that would tend to support a finding that the defendants acted in bad faith. A motion for summary judgment is properly granted only after thorough consideration of the evidence presented by the party opposing the motion.

Plaintiffs state that the "record is replete with evidence," but they do not identify the relevant portions of the record.[2] Plaintiffs, as the appellants, have the burden of demonstrating that the lower court erred. They have not done so. Because this issue is presented in such a perfunctory manner, we deem it forfeited. *See United States v. Johnson*, 430 F.3d 383, 397 (6th Cir. 2005) ("[i]t is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (citation and internal quotation marks omitted).

V.

In view of our disposition, we need not address the additional issues raised by the parties. We affirm the judgment of the district court.

---

[2]Plaintiffs discuss this issue with slightly more specificity in their reply brief, but a reply brief cannot excuse forfeiture. To preserve an issue, a party must discuss it in its opening brief. *See Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir. 2002).