NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0411n.06

No. 18-3939

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 07, 2019
DEBORAH S. HUNT, Clerk

VIRGIL VADUVA,

     Plaintiff - Appellant,

v.

CITY OF XENIA, et al.,

     Defendants - Appellees.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO

BEFORE:    NORRIS, CLAY, and SUTTON, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff Virgil Vaduva appeals the district court's December 19, 2017 order granting Defendants Michael Engle, Joshua Long, Wesley Smith, Jeanne Mills, John Caupp, Marsha Bayless, Jeffrey Osburn, and David Pazynski judgment on the pleadings, as well as the district court's September 4, 2018 order granting Defendant City of Xenia summary judgment. Plaintiff's complaint, filed pursuant to 42 U.S.C. §§ 1983, 1985(3), alleges that Defendants enacted and enforced Xenia Codified Ordinance § 648.12, in violation of the First and Fourteenth Amendments to the United States Constitution. For the reasons set forth below, we **AFFIRM** the district court's orders.

## BACKGROUND

### Factual Background

Defendant City of Xenia is a small city in southwestern Ohio. In June 2013, Defendants Michael Engle, Joshua Long, Wesley Smith, Jeanne Mills, and John Caupp were members of the Xenia City Council, Defendant Marsha Bayless was the Mayor of Xenia, and Defendants Jeffrey

Osburn and David Pazynski were officers of the Xenia Police Department. We refer to these Defendants as "the City," "City Council Defendants," and "Officer Defendants" respectively.

On June 13, 2013, City Council Defendants voted unanimously to enact Xenia Codified Ordinance § 648.12 and to amend Xenia Codified Ordinance § 604.01. XCO § 648.12 prohibits "panhandling" in numerous forms and areas of the City.[1] And XCO § 604.01 in part defines "panhandling" as "[t]o request verbally, in writing, or by gesture or other actions, money, items of value, a donation, or other personal financial assistance . . . [or to] request for a person to purchase an item for an amount that a reasonable person would consider to be in excess of its value."

---

[1] XCO § 648.12 states, in relevant part:

(b) No person shall solicit for panhandling in any of the following manners:

(1) In any type of aggressive manner;
(2) On any private property in which there is any type of written notice prohibiting solicitation and/or panhandling;
(3) On any other private property, unless the person panhandling has obtained prior permission from the owner or occupant;
(4) From any operator or occupant of a motor vehicle or from any person entering or exiting a motor vehicle;
(5) Within 20 feet of any pedestrians waiting in line for service or waiting in line for an event;
(6) Within 20 feet of any pedestrians waiting in line to obtain access to a building;
(7) Within 20 feet of any entrance or exit of the building for any check cashing business, bank, credit union, or savings and loan during the hours of operation of any of these businesses;
(8) Within 20 feet of any automated-teller machine during its hours of operation;
(9) At any bus stops or bus shelters;
(10) In any vehicle with the right-of-way;
(11) In any public transportation vehicle or any public transportation facility;
(12) Within 20 feet of the area of the sidewalk;
(13) Within 20 feet of the entrance or exit of any public facility;
(14) On public property within 20 feet of an entrance to a building;
(15) On public property within 20 feet of an entrance to a parking lot;
(16) On a public street, by intentionally or recklessly blocking the safe or free passage of a person or vehicle;
(17) In any manner which involves the use of false or misleading representations. . . .

(d) Whoever violates this section is guilty of panhandling, a misdemeanor of the fourth degree. Whoever violates this sections three times or more within one year is guilty of a third degree misdemeanor.

On February 13, 2015, Plaintiff, seeking to challenge the constitutionality of XCO § 648.12, solicited donations on the sidewalk outside of the entrance to Xenia City Hall. Plaintiff solicited donations by holding a sign that read, "HELP THE POOR NEED $ FOOD," and asking passersby if they could spare a few dollars. Plaintiff stated to several passersby that that he would give any donations he received to a local charity. Officer Defendants subsequently issued Plaintiff a citation for violating XCO § 648.12(b)(13), which prohibits panhandling "[w]ithin 20 feet of the entrance or exit of any pubic facility."[2]

Plaintiff was convicted following a jury trial. On appeal, Plaintiff argued that his conviction should be vacated because he did not engage in "panhandling" as defined by XCO § 604.01. Specifically, Plaintiff argued that in order to constitute "panhandling," an individual must solicit donations for personal use, rather than for charity. The appellate court agreed, and vacated Plaintiff's conviction on the grounds that the trial court's jury instructions did not state that Plaintiff must have solicited donations for personal use, rather than for charity. The state declined to re-prosecute Plaintiff, and the case against him was dismissed. Plaintiff does not intend to solicit donations for personal use in the future.

**Procedural History**

On February 9, 2017, Plaintiff filed a complaint against Defendants in the United States District Court for the Southern District of Ohio. Plaintiff's complaint, filed pursuant to 42 U.S.C. §§ 1983, 1985(3),[3] alleges in relevant part (1) that City Council Defendants voted to enact XCO § 648.12, (2) that Officer Defendants enforced XCO § 648.12 by issuing Plaintiff a citation for

---

[2] Plaintiff filmed many of his interactions with passersby as well as his interactions with Officer Defendants; the video can be found at http://vimeo.com/119646554. At the beginning of the video, Plaintiff stated that he would give any donations he received to a local charity.

[3] 42 U.S.C. § 1985(3) provides a cause of action for certain conspiracies to deprive an individual of his or her constitutional rights. *See, e.g.*, *Seguin v. City of Sterling Heights*, 968 F.2d 584, 590 (6th Cir. 1992).

violating XCO § 648.12(b)(13), (3) that the City enacted XCO § 648.12, which is unconstitutional on its face and as applied, and (4) that the City enforced XCO § 648.12 by executing an unlawful policy or custom, all in violation of the First and Fourteenth Amendments to the United States Constitution.

Defendants filed a motion for judgment on the pleadings. On December 19, 2017, the district court granted the motion with respect to City Council Defendants and Officer Defendants, but denied the motion with respect to the City. Adopting a magistrate judge's report and recommendation, the district court reasoned that City Council Defendants are entitled to legislative immunity against Plaintiff's claims, and that Officer Defendants are entitled to qualified immunity against Plaintiff's claims.

The City filed a motion for summary judgment. On September 4, 2018, the district court granted the motion. The district court reasoned that Plaintiff lacks standing to challenge the constitutionality of XCO § 648.12 on its face or as applied, and that Plaintiff failed to demonstrate deliberate indifference in furtherance of his claim that the City executed an unlawful policy or custom. Accordingly, the case was dismissed.

This appeal followed.

## DISCUSSION

### I.     Standard of Review

We review a district court's order granting judgment on the pleadings de novo. *Hindel v. Husted*, 875 F.3d 344, 346 (6th Cir. 2017). We accept as true all well-pleaded factual allegations of the non-moving party, but need not accept as true unwarranted factual inferences or legal conclusions. *Jackson v. Prof'l Radiology Inc.*, 864 F.3d 463, 466 (6th Cir. 2017). Judgment on the

pleadings should be granted when no material issue of fact exists and the moving party is entitled to judgment as a matter of law. *Id.*

Similarly, we review a district court's order granting summary judgment de novo. *Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 316 (6th Cir. 2014). We draw all reasonable inferences in favor of the non-moving party, but need not draw strained and unreasonable inferences. *Audi AG v. D'Amato*, 469 F.3d 534, 545 (6th Cir. 2006). Summary judgment should be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Hyland*, 771 F.3d at 316.

## II.   Analysis

We will address Plaintiff's claims against each set of Defendants in turn.

### A. City Council Defendants

Plaintiff's complaint alleges that City Council Defendants violated the First and Fourteenth Amendments by "pass[ing] and sign[ing] into effect" XCO § 648.12, "[t]he effect of [which] was to restrict panhandling in all but extremely limited areas." (RE 1, Complaint, PageID # 5.) The district court held that City Council Defendants are entitled to legislative immunity against Plaintiff's claims. We agree.

Local legislators sued in their individual capacities may invoke absolute legislative immunity to insulate themselves from liability for certain actions. *Smith v. Jefferson Cty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 218 (6th Cir. 2011). This immunity "attaches to all actions taken in the sphere of legitimate legislative activity." *R.S.S.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 437 (6th Cir. 2005) (quotation omitted). And passing an ordinance is a "purely legislative act." *Id.* at 438; *see also Tucker v. City of Richmond*, 388 F.3d 216, 224 (6th Cir. 2004); *Shoultes v Laidlaw*,

886 F.2d 114, 117 (6th Cir. 1989). Thus, City Council Defendants are entitled to legislative immunity against Plaintiff's claims.

Plaintiff argues that City Council Defendants are not entitled to legislative immunity because passing an *unconstitutional* ordinance is not within the sphere of legitimate legislative activity, and that the district court erred by "focus[ing] on the nature of the act [rather than] the unconstitutionality of the ordinance." (Reply Brief for Appellant at 12.) Yet, to the contrary, "whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it."[4] *Canary v. Osborn*, 211 F.3d 324, 329 (6th Cir. 2000) (quotation omitted); *see also Collins v. Vill. of New Vienna*, 75 F. App'x 486, 488 (6th Cir. 2003) (per curiam). Thus, the constitutionality of XCO § 648.12 is not relevant to this legislative immunity analysis. *See, e.g.*, *Smith*, 641 F.3d at 218 ("Even if the Board did not have the power to abolish the alternative school under Tennessee law, the Board members may still enjoy legislative immunity as individuals in federal court for their legislative actions, sound or unsound."); *Shoultes*, 886 F.2d at 117–18 ("While the ordinance subsequently was held invalid, it was passed by a properly constituted legislative body, which was empowered to pass zoning regulations. Accordingly, we hold that the Mayor and Council members are shielded from suit by absolute legislative immunity.").

---

[4] In *Haskell v. Washington Twp.*, 864 F.2d 1266, 1278 (6th Cr. 1988), this Court appeared to hold otherwise, stating that "absolute [legislative] immunity does not extend to even traditionally legislative actions of officials taken either in bad faith, because of corruption, or primarily in furtherance of *personal* instead of public interests." However, the Supreme Court's subsequent decision in *Bogan v. Scott-Harris*, 523 U.S. 44 (1998), "made clear that the determination of whether an act[] is 'legislative' must be made without regard to the legislators' subjective intent." *Canary v. Osborn*, 211 F.3d 324, 329 (6th Cir. 2000). The rationale for this rule is straightforward: "[T]he threat of liability," including liability based on a judge's or jury's determination of legislators' subjective intent, "may significantly deter service in local government, where prestige and pecuniary rewards may pale in comparison." *Smith*, 641 F.3d at 219 (quotation omitted).

Accordingly, we hold that City Council Defendants are entitled to judgment on the pleadings based on legislative immunity.[5]

## B. Officer Defendants

Plaintiff's complaint alleges that Officer Defendants violated the First and Fourteenth Amendments by "issu[ing] [a] citation" to Plaintiff for violating XCO § 648.12(b)(13) "and prepar[ing] a report to support the citation," with "utter and wanton disregard for the law." (RE 1, PageID # 6.) The district court held that Officer Defendants are entitled to qualified immunity against Plaintiff's claims. We agree.

Local government officials sued in their individual capacities may invoke qualified immunity to insulate themselves from liability for certain actions. *Rafferty v. Trumbull County*, 915 F.3d 1087, 1093 (6th Cir. 2019). This immunity "shields government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 897 (6th Cir. 2019) (quotation omitted). At the motion to dismiss or judgment on the pleadings stage, the test is "whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violate the plaintiff's clearly established constitutional right." *Id.* at 899 (quotation omitted). This test can be broken down into two steps. *Id.* at 897. First, "do the facts alleged show that the [official's] conduct violated a constitutional right?" *Id.* (quotation omitted). And second, "is the right clearly established?" *Id.* (quotation omitted). We may address the steps in either order, and begin with the second step.

---

[5] This legislative immunity analysis applies equally to Plaintiff's § 1983 and § 1985(3) claims. *See Tenney v. Brandhove*, 341 U.S. 367, 379 (1951); *see also Krause v. Rhodes*, 471 F.2d 430, 453–54 (6th Cir. 1972), *rev'd on other grounds by Scheuer v. Rhodes*, 416 U.S. 232 (1974).

Regardless of whether the facts alleged show that the official's conduct violated a constitutional right, "officials should generally receive qualified immunity when enforcing properly enacted laws." *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 441 (6th Cir. 2016); *see also Risbridger v. Connelly*, 275 F.3d 565, 573–74 (6th Cir. 2002); *Wolfel v. Morris*, 972 F.2d 712, 719–20 (6th Cir. 1992). This is because, in such cases, the official's conduct "typically satisfies the core inquiry . . . that the immunity doctrine was designed to test," "the objective reasonableness of [the] official's conduct." *Citizens in Charge*, 810 F.3d at 441 (quotation omitted); *see also Andrews v. Hickman County*, 700 F.3d 845, 853 (6th Cir. 2013) ("The doctrine [of qualified immunity] focuses on 'the objective reasonableness of an official's conduct, as measured by reference to clearly established law' . . . ."). "Any other approach would place risky pressures on public officials to second-guess legislative decisions." *Citizens in Charge*, 810 F.3d at 442. Officials faced with a statute of questionable validity "would find themselves forced to choose between applying the law (and subjecting themselves to monetary liability) or declining to do so (and subjecting themselves to a mandamus lawsuit)," which "is not a recipe for good government." *Id.*

However, "[t]he enforcement of a presumptively valid law . . . does not automatically entitle officials to qualified immunity." *Id.* For instance, some laws may be "grossly and flagrantly unconstitutional." *Id.* (quotation omitted). In such cases, "any reasonable offic[ial] would decline to enforce them," and officials that do enforce them would not be entitled to qualified immunity. *Id.*; *see also Risbridger*, 275 F.3d at 573. As an example, in *Leonard v. Robinson*, 477 F.3d 347, 359 (6th Cir. 2007), this Court held that "no reasonable police officer would believe" that three Michigan statutes were constitutional as applied to the defendant's arrest of the plaintiff for engaging in "political speech during a democratic assembly."

In this case, Officer Defendants were enforcing a properly enacted ordinance when they issued Plaintiff a citation for soliciting donations for charity on the sidewalk in front of Xenia City Hall. Indeed, Plaintiff, seeking to challenge the constitutionality of XCO § 648.12, affirmatively asked Officer Defendants to issue him a citation for violating the ordinance. Thus, Officer Defendants are entitled to qualified immunity against Plaintiff's claims unless XCO § 648.12 is "grossly and flagrantly unconstitutional." *Citizens in Charge*, 810 F.3d at 442 (citation omitted).

Plaintiff argues that it is, and analogizes this case to *Speet v. Schuette*, 726 F.3d 867, 870 (6th Cir. 2013), in which this Court held that Michigan's "anti-begging statute" violated the First Amendment on its face. However, the statute at issue in *Speet* was significantly broader than XCO § 648.12. Michigan's anti-begging statute prohibited "begging in a public place," Mich. Comp. Laws § 750.167(1)(h), and this Court reasoned that it could not be read to "limit its constitutional effect;" rather, it "simply ban[ned] an entire category of activity that the First Amendment protects." *Speet*, 726 F.3d at at 879. In contrast, XCO § 648.12 prohibits "panhandling" in 17 specific forms and areas of the City. While one might argue that the 17 specific prohibitions in XCO § 648.12 effectively ban an entire category of activity that the First Amendment protects, whether that argument would be successful is unclear, particularly in light of this Court's frequent acknowledgment that "facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute." *Id.* Thus, XCO § 648.12 is not grossly and flagrantly unconstitutional, and Officer Defendants are entitled to qualified immunity against Plaintiff's claims.[6]

---

[6] To be sure, since the Supreme Court's decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), which clarified the proper analysis for whether a law is content-based or content-neutral, several courts have held various types of anti-solicitation laws to be unconstitutional. *See, e.g.*, *Cutting v. City of Portland*, 802 F.3d 79 (1st Cir. 2015); *Norton v. City of Springfield*, 806 F.3d 411 (7th Cir. 2015); *Reynolds v. Middleton*, 779 F.3d 222 (4th Cir. 2015). However, each of these cases, including *Reed*, was decided *after* February 13, 2015, the date on which Officer Defendants cited Plaintiff for violating XCO § 648.12. And whether Plaintiff's constitutional rights were clearly

Accordingly, we hold that Officer Defendants are entitled judgment on the pleadings based on qualified immunity.[7]

## C. The City

### i. Plaintiff's Challenges to the Constitutionality of XCO § 648.12

Plaintiff's complaint alleges that XCO § 648.12, both on its face and as applied, is an unconstitutional restriction on his First Amendment right to solicit donations for charity.[8] The district court held that Plaintiff lacks standing to challenge the constitutionality of XCO § 648.12 on its face or as applied. We agree.

"The irreducible constitutional minimum of standing contains three elements:" (1) "the plaintiff must have suffered an injury in fact" that is both "concrete and particularized" and "actual or imminent," (2) "there must be a causal connection between the injury and the conduct complained of," and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" of the court. *Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747, 752 (6th Cir. 2018) (quotation omitted). However, "plaintiffs who have standing to bring a damages claim do not necessarily have standing to bring a claim for injunctive relief" or a claim for declaratory relief. *Fair Elections Ohio v. Husted*, 770 F.3d 456, 460 n.1 (6th Cir. 2014). Rather, plaintiffs seeking injunctive or declaratory relief must show "actual present harm or a significant possibility of future harm." *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 833 (6th Cir. 2001) (quotation omitted).

---

established "turns on the federal constitutional, statutory, and case law existing *at the time of the challenged action*." *Rodgers v. Jabe*, 43 F.3d 1082, 1085 (6th Cir. 1995) (emphasis added).

[7] This qualified immunity analysis applies equally to Plaintiff's § 1983 and § 1985(3) claims. *See Vakilian v. Shaw*, 335 F.3d 509, 521 (6th Cr. 2003).

[8] For the first time on appeal, Plaintiff also argues that XCO § 648.12 is unconstitutionally vague. However, Plaintiff forfeited this argument by not raising it before the district court. *See Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 630 n.6 (6th Cir. 2018).

Plaintiff's facial and as-applied challenges to the constitutionality of XCO § 648.12 seek injunctive and declaratory relief, *i.e.*, relief on a "forward-going basis." *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 675 (6th Cir. 2018); *see also Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 193 (6th Cir. 1997) ("If a statute is unconstitutional as applied, the State may continue to enforce the statute in different circumstances where it is not unconstitutional, but if a statute is unconstitutional on its face, the State may not enforce the statute under any circumstances."). Specifically, Plaintiff seeks "[e]quitable relief, including, without limitation, an order preliminarily and permanently enjoining the City of Xenia . . . from enforcing XCO § 648.12 until it is repealed or amended to conform with the 1st Amendment to the United States Constitution." (RE 1, PageID # 9.) Accordingly, Plaintiff must show "actual present harm or a significant possibility of future harm" resulting from the City's continued enforcement of XCO § 648.12. *Brent*, 901 F.3d at 675 (quotation omitted). Plaintiff has not met this burden. For instance, Plaintiff has not alleged that he intends in the future to engage in conduct that XCO § 648.12 currently prohibits, such as soliciting donations *for personal use* on the sidewalk outside the entrance of Xenia City Hall. Thus, Plaintiff lacks standing to challenge the constitutionality of XCO § 648.12 on its face or as applied.[9]

Plaintiff argues that he has standing to challenge the constitutionality of XCO § 648.12 "because he was cited and prosecuted for exercising his constitutional right to collect donations for charity." (Brief for Appellant at 46.) But this past injury "is not an adequate injury in fact to

---

[9] That Plaintiff challenges the constitutionality of XCO § 648.12 on First Amendment overbreadth grounds does not alter this conclusion, as "a party asserting an overbreadth challenge still must show an injury in fact to challenge the provision." *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 985 (6th Cir. 2012). Moreover, Plaintiff's challenges to the constitutionality of XCO § 648.12 allege that the ordinance is an unconstitutional restriction on his First Amendment right to solicit donations *for charity*. Yet, as discussed above, XCO § 648.12 does not restrict Plaintiff's right to solicit donations for charity. In order to constitute "panhandling," an individual must solicit donations for *personal use*. *State v. Vaduva*, 66 N.E.3d 212, 218–19 (Ohio Ct. App. 2016).

confer standing for declaratory and injunctive relief." *Grendell*, 252 F.3d at 832; *see also Barber v. Miller*, 809 F.3d 840, 849 (6th Cir. 2015) ("Though [the plaintiff] has standing to sue under § 1983 for *past harms*, he must demonstrate separate standing to seek declaratory or injunctive relief focused on prospective harm."). To be sure, past injury "might be 'evidence bearing on whether there is a real and immediate threat of repeated injury.'" *Grendell*, 252 F.3d at 833 (quotation omitted). But in this case, the likelihood of that repeated injury is drastically diminished by the fact that the XCO § 648.12 does not prohibit the conduct for which Plaintiff was cited and prosecuted. *Cf. Sumpter v. Wayne County*, 868 F.3d 473, 491 (6th Cir. 2017) ("The likelihood of future injury [in the form of group strip searches] is further diminished by the fact that defendants have changed their official policy to prohibit group strip searches.").

### ii. Plaintiff's Claim that the City Executed an Unlawful Policy or Custom

Plaintiff's complaint alleges that the City violated the First and Fourteenth Amendments by "fail[ing] to train it[s] police officers . . . in the area of the public's constitutional right to freedom of speech." (RE 1, PageID # 6.) The district court held that Plaintiff did not demonstrate a genuine issue of material fact regarding whether the City was deliberately indifferent to violations of its citizens' rights. We agree.

"A plaintiff may . . . hold a municipal entity liable under § 1983 for the entity's own wrongdoing." *Baynes v. Cleland*, 799 F.3d 600, 620 (6th Cir. 2015). In order to hold a municipal entity liable under § 1983, "a plaintiff must show: (1) a deprivation of a constitutional right; and (2) that the municipal entity is responsible for that deprivation" by virtue of an "official policy or custom." *Id.* (quotation omitted). A municipality is not entitled to legislative or qualified immunity. *See Richko v. Wayne County*, 819 F.3d 907, 914 (6th Cir. 2016). We begin with the second element, whether the City is responsible for the alleged violation by virtue of an official policy or custom.

"To show the existence of a municipal policy or custom leading to the alleged violation, a plaintiff can identify: (1) the municipality's legislative enactments or official policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal violations." *Baynes*, 799 F.3d at 621. "Each of these different approaches to liability requires a different analysis, [although] each seeks to answer the same fundamental question: did the municipality cause the harm or did an individual actor?" *Morgan v. Fairfield County*, 903 F.3d 553, 565 (6th Cir. 2018). For instance, when the harm is the result of a failure to train, we apply "'rigorous requirements of culpability and causation'—holding a municipality liable if it has been deliberately indifferent to constitutional rights." *Id.* (quotation omitted). In contrast, when the harm is the result of "the straightforward carrying out of a municipal policy or custom, the determination of causation is easy." *Id.* at 566.

In this case, Plaintiff alleges only that his harm is the result of a failure to train. Accordingly, we apply "'rigorous requirements of culpability and causation'—holding a municipality liable if it has been deliberately indifferent to constitutional rights." *Id.* at 565. "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Baynes*, 799 F.3d at 621 (quotation omitted). Deliberate indifference also requires that "[t]he violated right . . . be clearly established because a municipality cannot *deliberately* shirk a constitutional duty unless that duty is clear." *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 995 (6th Cir. 2017); *see also Sumpter*, 868 F.3d at 490 n.8. *But see Garner v. Memphis Police Dep't*, 8 F.3d 358, 366 (6th Cir. 1993). And as discussed above, Officer Defendants did not violate Plaintiff's clearly established constitutional rights because, at the time that they issued Plaintiff a citation for soliciting donations

for charity, they were enforcing a properly enacted ordinance that was not grossly and flagrantly unconstitutional. Thus, there is no genuine dispute of material fact regarding whether the City is responsible for the alleged violation of Plaintiff's constitutional rights.

Accordingly, we hold that the City is entitled to summary judgment with regard to Plaintiff's challenges to the constitutionality of XCO § 648.12 based on lack of standing, and is entitled to summary judgment with regard to Plaintiff's claim that the City executed an unlawful policy or custom based on failure to demonstrate deliberate indifference.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's orders.